542 So.2d 444 (1989)
STATE of Florida, Appellant,
v.
Robert Alan BILLINGSLY, Appellee.
No. 88-1388.
District Court of Appeal of Florida, Fifth District.
April 27, 1989.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Laura Griffin, Asst. Atty. Gen., Daytona Beach, for appellant.
Thomas C. Greene of Greene, Colegrove, deGroot Chartered, Sanford, for appellee.
DANIEL, Judge.
The state appeals a suppression order. We reverse.
In 1987, the defendant, Robert Billingsly, was charged with possession of cocaine. Prior to trial, Billingsly moved to suppress statements he made to police on the basis that his arrest was illegal.
At the suppression hearing, Deputy Sheriff Dennis Strange testified that on September 12, 1986, he was on the roof of a hotel observing the parking lot below. *445 Strange noticed a vehicle in the parking lot in which two men, later identified as Billingsly and a man named Blemly, were seated. Blemly was in the driver's seat and Billingsly was in the front passenger seat. Blemly turned the interior light on and off numerous times. Strange got down from the roof and walked around to the back of the vehicle and observed it for a while. Blemly turned the interior light on again and Strange could see Blemly doing something with his hand between his legs. Strange could also see that Billingsly was looking at whatever Blemly was doing.
As Strange walked closer to the vehicle, Blemly turned off the light. Strange continued to approach the vehicle and used his flashlight to see what Blemly was doing. Strange saw Blemly holding a mirror or dark glass square with a white powdery substance on it and a razor in his other hand. Based on his training, Strange believed that the powdery substance was cocaine.
Blemly immediately put the glass underneath his legs and attempted to back his car out of the parking lot but was blocked by another vehicle. Strange then knocked on the window and asked Blemly to open the door. Blemly refused to do so and instead he rolled down the window and tried to disperse the cocaine. Strange reached inside the window, unlocked the door and then opened it. As Strange attempted to handcuff Blemly, he noticed that Billingsly was trying to put his hand in his right pocket. Strange directed him to put his hands on the dashboard. Billingsly did not comply and kept trying to reach into his pocket. Billingsly finally put his hands on the dash but only for a few seconds. Billingsly then said he was getting out of the car and did so despite Strange's demand not to do so. Billingsly walked to the front of the vehicle, pulled both hands out of his pockets, threw them up in the air and said something to the effect of "What's the problem here, officer?" A brown vial containing a white powdery substance which appeared to be cocaine was found a few minutes later in the same area where Billingsly had lifted his hands. No one else had been in the location besides Blemly and Billingsly.
Both Blemly and Billingsly were arrested. At the police station, Billingsly made the statement that he was going to lose his business for the small amount of drugs that he had.
The facts in this case establish that Deputy Strange was located in a nonprotected area (the parking lot) looking inside a constitutionally protected area (the vehicle). At this point, no search occurred and there was no fourth amendment violation. See Ensor v. State, 403 So.2d 349 (Fla. 1981). The act of Deputy Strange in shining his flashlight to illuminate the interior of the vehicle violated no rights secured by the fourth amendment. See United States v. Dunn, 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987) (officers' use of a beam of a flashlight, directed through the essentially open front of the defendant's barn, did not transform their observations into an unreasonable search within the meaning of the fourth amendment); Texas v. Brown, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (use of artificial means to illuminate a darkened area does not constitute a search and thus triggers no fourth amendment protection). Likewise, the fact that Deputy Strange was specifically looking at the area of suspicious activity in the vehicle does not violate the fourth amendment. See United States v. Dunn, 107 S.Ct. at 1141 (fact that police observation was directed specifically at the identification of marijuana plants growing on an area protected by the fourth amendment was deemed irrelevant); Texas v. Brown, 103 S.Ct. at 1542 (fact that officer changed his position and bent down at an angle so that he could see inside the defendant's vehicle was irrelevant to a fourth amendment analysis; there is no legitimate expectation of privacy shielding that portion of the interior of a automobile which may be viewed from outside the vehicle by either inquisitive passers-by or diligent police officers).
In sum, Deputy Strange's observation of a mirror or glass, a white powdery substance and a razor blade inside the vehicle was clearly legal. Based on his training and experience, Deputy Strange reasonably *446 believed that these items were drugs and drug paraphernalia. Deputy Strange therefore had probable cause to arrest Billingsly for possession. See Smith v. State, 363 So.2d 21 (Fla. 3d DCA 1978).
Even if we were to assume that Deputy Strange did not have probable cause to arrest Billingsly, Strange clearly had a founded suspicion to detain him for investigation. While Billingsly was being detained, he exited the vehicle, took his hands out of his pockets and then threw them up in the air. After Billingsly was frisked, this area was searched and a vial containing cocaine was found. Discovery of this contraband in the precise area in which Billingsly was moments before gave Deputy Strange probable cause to arrest him. See Greene v. State, 532 So.2d 1309 (Fla. 5th DCA 1988). Since there was no illegal police action, the trial court erred in suppressing the statements made by Billingsly while in police custody.
Spence v. State, 525 So.2d 442 (Fla. 5th DCA 1988), relied on by the trial court, is distinguishable. In that case, the drugs were observed after the police officer had illegally detained the occupants of a vehicle. In contrast, here the contraband was observed prior to the time that any detention or seizure occurred.
REVERSED and REMANDED.
SHARP, C.J., and COBB, J., concur.