UNITED STATES of America

v.

Darnell A. EAGLIN.

Crim. A. No. 91–0016 (RCL).

United States District Court,
District of Columbia.

March 11, 1991.

John A. Beasley, Asst. U.S. Atty., Washington, D.C., for plaintiff.

William J. Garber, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

LAMBERTH, District Judge.

This case comes before the court on defendant Darnell A. Eaglin's motion to suppress all evidence seized from him pursuant to his arrest by officers of the District

of Columbia Metropolitan Police Department on December 21, 1990.

## I. FACTS

At the hearing held on this motion on March 7, 1991, Officer James McCoy, Jr., testified that he and Officer Hilliard were working undercover in an unmarked car near the 2800 block of Robinson Place, S.E. At about 8:30 p.m., the two officers received a lookout from an officer in an observation post that a black male wearing a green jacket or coat with a light collar was observed exchanging drugs for money. Officers McCoy and Hilliard were members of an arrest team and had not observed the alleged transaction involving the described individual.

After arriving on the 2800 block of Robinson Place, the officers observed a black male with a black jacket and white collar walking down the sidewalk on the odd side of the street. On cross-examination, Officer McCoy admitted that the officers knew that the black male, later identified as Mr. Eaglin, did not match the lookout description before they decided to approach him. Nevertheless, the arrest team decided to stop Mr. Eaglin.

The officers, driving an unmarked Ford Bronco, pulled up "cross-ways," about fifteen feet ahead of Mr. Eaglin, immediately jumped from the Bronco with their guns drawn, and yelled that they were police officers. Officer McCoy testified that badges and patches identifying themselves as police officers were also visible. There were no other individuals in the vicinity of Mr. Eaglin when the officers jumped out of the Bronco.

Officer McCoy testified that he intended to question Mr. Eaglin before he saw him throw the plastic bag. The officers immediately approached Mr. Eaglin, at which time Mr. Eaglin reached into his pants pocket and threw a clear plastic bag into the air. One of the officers retrieved the bag; when it was found to contain illegal narcotics, Mr. Eaglin was arrested.

## II. ISSUES

Defendant claims that the police had no reasonable articulable suspicion to perform a stop pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and that the drugs recovered from Mr. Eaglin must be suppressed as the fruit of the illegal seizure. The government claims that Mr. Eaglin lacks standing to move for suppression of the drugs because he had abandoned them. Alternatively, the government claims that the police officers performed a proper *Terry* stop. The court will grant the defendant's motion to suppress, finding that the police officers performed an unlawful *Terry* stop which led to the discovery of the drugs.

## III. ANALYSIS

■ A person is seized for fourth amendment purposes only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. *United States v. Maragh*, 894 F.2d 415, 418 (D.C.Cir.1990) (citations and quotation marks omitted). Circumstances which might indicate a seizure include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980). Police attempts to block a person's path can also contribute to a finding of seizure. *United States v. Maragh*, 894 F.2d at 418.

■ Reviewing the circumstances in the present case, the court concludes that Mr. Eaglin was seized for fourth amendment purposes at the moment the two officers jumped from their vehicle, yelled "police," and displayed drawn guns as they approached Mr. Eaglin. Officer McCoy testified that the Bronco was pulled up "cross-ways" and about fifteen feet from Mr. Eaglin in order to block Mr. Eaglin's path. Mr. Eaglin was the only person in the immediate area when the police took these actions. Viewing all these circumstances,

no reasonable person in Mr. Eaglin's position could reasonably believe that he was free to leave in light of the threatening behavior of the police as described above.

Officer McCoy's pre-approach intent to stop Mr. Eaglin is relevant to, although not required for, the court's finding of seizure in the present case. While it is well-established that a court making a seizure inquiry must focus on the impact of police actions and circumstances on a reasonable person, not on the intentions of the police, which are unknown to the citizen at the time of the police-citizen encounter, *Michigan v. Chesternut*, 486 U.S. 567, 575 n. 7, 108 S.Ct. 1975, 1980 n. 7, 100 L.Ed.2d 565 (1988); *United States v. Lewis*, 921 F.2d 1294, 1300 (D.C.Cir.1990), the police intentions can be relevant to the court's thorough consideration of the factors involved in making a seizure determination. In making a seizure determination, the admitted intention of the police to make a *Terry* stop can aid the court in its analysis of the police-citizen encounter insofar as it can elucidate how the police acted towards the citizen, such as manner of approach, tone of voice, etc. Such elucidation can assist the court in determining whether a person has been "seized" from a reasonable person's viewpoint.

As just explained, the subjective intention of the police, made known to the court at a suppression hearing, can be taken into consideration by the court when making a seizure determination even though the citizen could not have known the intention of the police at the time of the encounter. In the present case, for example, Officer McCoy testified that he had made the decision to stop Mr. Eaglin even before pulling the Bronco up in front of him. Officer McCoy's intention to stop Mr. Eaglin before Mr. Eaglin was even aware of the officers' presence helps the court under-

stand the manner in which the police subsequently approached Mr. Eaglin, such as the manner in which the police pulled up in the Bronco, jumped out of the vehicle, and announced their identity. In light of their intent, this court is convinced that the officers' actions, as just described above, were carried out in a manner which would give Mr. Eaglin the message that he was not free to go anywhere. A reasonable person in Mr. Eaglin's position would not have felt that he was free to disregard the police and continue on his way from the moment that the police announced their identity with guns drawn after jumping out of the Bronco which had been pulled across Mr. Eaglin's path.

The court having found that a seizure had taken place, the court must determine whether this seizure was lawful under fourth amendment law. It is important to note that the court, after hearing the testimony of Officer McCoy, finds that the seizure took place before Mr. Eaglin discarded the plastic bag. As such, the seizure must be justified by the circumstances as they existed before the bag was discarded.[1]

A *Terry* stop is a seizure which must be justified by specific and articulable facts, and rational inferences to be drawn from those facts, which establish a reasonable suspicion that the person seized is involved in criminal activity. *Terry v. Ohio*, 392 U.S. at 21, 88 S.Ct. at 1879; *United States v. White*, 648 F.2d 29, 33 (D.C.Cir.1981); *United States v. Nurse*, 916 F.2d 20, 22 (D.C.Cir.1990).

In the present case, the police did not have the requisite facts to establish a reasonable suspicion that Mr. Eaglin was involved in criminal activity. Officer McCoy testified that it was determined that

---

1. The government's claim that Mr. Eaglin lacks standing to challenge the seizure of the evidence under an abandonment theory is misplaced because it was the unlawful seizure of Mr. Eaglin which led to the discovery of the contraband. The Court of Appeals for the District of Columbia Circuit recently stated that an "abandonment may be involuntary, and thus invalid, where it results directly from police miscon-

duct, such as an illegal search or seizure...." *United States v. Lewis*, 921 F.2d 1294, 1302 (D.C. Cir.1990). *See Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) (evidence obtained as result of unlawful seizure cannot cure unlawful seizure); *see also United States v. Maragh*, 894 F.2d at 419 (consent given subsequent to seizure which led to discovery of contraband cannot cure unlawful seizure).

Mr. Eaglin did not fit the lookout description before the officers jumped from their vehicle and approached Mr. Eaglin. Because neither officer had observed Mr. Eaglin in any suspicious activity, and because the officers had determined that Mr. Eaglin did not fit the lookout description which would have linked him to illegal activity, the officers acted unlawfully when they seized Mr. Eaglin.[2] Because the officers' seizure of Mr. Eaglin was unlawful, it is hereby ORDERED that the drugs seized as fruit of that unlawful seizure are suppressed.

SO ORDERED.

2. The court does not decide whether or not the lookout description, as relayed to the arrest team, would have provided the requisite articulable suspicion to perform a *Terry* stop had the police determined that Mr. Eaglin had fit that description.