UNITED STATES

v.

**Dantonio Marquies LOVELACE, and Darryl Dewayne Sedgewick**

No. CR. 03–162(RJL).

United States District Court, District of Columbia.

April 8, 2004.

Charles Joseph Harkins, Jr., U.S. Attorney's Office, Washington, DC, for Plaintiff.

Joanne Roney Hepworth, Law Offices of Joanne Roney Hepworth, Pleasant S. Brodnax, III, Joseph Roll Conte, Washington, DC, Anthony Jones, Riverdale, MD, for Defendants.

## MEMORANDUM OPINION AND ORDER

LEON, District Judge.

Before the Court are defendant Dantonio Marquies Lovelace's ("Lovelace") motions to suppress narcotics and an automatic handgun seized from him, as well as statements he made at the station house after his arrest on December 14, 2002. Co-defendant Darryl Dewayne Sedgewick ("Sedgewick") joins in defendant Lovelace's motion seeking to suppress the cocaine base seized from his person on the same occasion. Both defendants argue, in effect, that the police officers who stopped them lacked the reasonable articulable suspicion necessary to conduct an investigatory stop of either of them, and defendant Lovelace further asserts that the statements he made following his arrest were involuntary. For the following reasons, the Court disagrees and DENIES both motions to suppress in their entirety.

### Factual Background

At hearings held on these motions,[1] Officer Joshua Branson of the Metropolitan Police Department ("MPD") testified that at approximately 1:30 a.m. on December 14, 2002, he and Officer John Sucato were on uniformed patrol on the 3100 block of Naylor Road, S.E., Washington, D.C., when they observed a green, four-door Cadillac parked in the parking lot in front of 3111 Naylor Road. According to Branson, the vehicle was running and was occupied by three individuals. The driver was later identified as defendant Sedgewick, and the individual in the front passenger seat was later identified as defendant Lovelace. The vehicle was parked approximately five to ten feet from, and parallel to, the sidewalk running along Naylor Road. Branson was familiar with this parking lot and had made several narcotics-related arrests there.

Upon seeing the Cadillac, Officer Branson slowly pulled his cruiser into the parking lot so that he and Officer Sucato could investigate further. Officer Branson stopped approximately five plus feet from the Cadillac in a "nose to nose" position such that the driver would not have been able to drive forward without bumping into his cruiser. As he came to a stop in the parking lot and was exiting his cruiser,

---

1. Hearings were held on these motions on December 5, 2003, March 5, 2004, and March 19, 2004.

Branson noticed that there was a black male standing outside of the passenger door of the Cadillac, engaging in what appeared to him to be a "hand to hand transaction." Upon seeing the cruiser, the black male turned and walked away from the scene. Officers Branson and Sucato exited their vehicle and immediately recognized the smell of marijuana emanating from the Cadillac. Branson walked around the back of the cruiser to the driver side door of the Cadillac, and engaged Sedgewick in conversation. Sucato walked to the passenger door of the Cadillac. While speaking with Sedgewick, Branson noticed a clear plastic cup of brown liquid in the cup holder near Sedgewick. Branson asked what was in the cup, and Sedgewick told him that the liquid was Remy Martin. Sedgewick was placed under arrest for possession of an open container of liquor in his car. A search of his person incident to the arrest yielded a large plastic bag containing small white rocks, weighing approximately 4.7 grams, which later field-tested positive for cocaine base.

While Officer Branson was speaking with Sedgewick, Officer Sucato noticed defendant Lovelace make reaching motions towards his waistband. Lovelace was removed from the vehicle and Branson conducted a pat-down search of Lovelace, which yielded a 9mm Lorcin semi-automatic handgun hidden in his waistband. A search of Lovelace's coat and pants pockets additionally yielded four clear plastic bags of a green weed-like substance, which later field-tested positive for THC, and two blue plastic bags containing a white rock substance, which field-tested positive for cocaine base. After Lovelace was transported to the police station, a more thorough search of his coat yielded a large white rock, approximately two inches in length, weighing approximately 25.5 grams, inside the lining of his coat. It too field-tested positive for cocaine base. In addition, after being provided his *Miranda* warnings, Lovelace gave Officer Branson a written, signed statement that he now seeks to suppress.

### Discussion

I. *Motion to Suppress Evidence Seized from Lovelace and Sedgewick in Violation of the Fourth Amendment*

In *Terry v. Ohio,* the Supreme Court held that a police officer needs neither a warrant, nor probable cause, to conduct a brief investigatory stop of a suspect if he has a reasonable articulable suspicion that criminal activity may be afoot. 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *United States v. Brown,* 334 F.3d 1161, 1164 (D.C.Cir.2003). The defendants' arguments for suppression of the evidence seized from them are twofold. First, they argue that Officers Branson and Sucato effected an unlawful stop when they pulled into the parking lot and stopped in a position that blocked defendant Sedgewick from moving his vehicle. Second, defendant Lovelace argues that assuming, *arguendo,* that blocking the Cadillac did not constitute a stop, the officers had no probable cause to seize and search him because his mere presence in a vehicle containing contraband is insufficient to establish probable cause. For the following reasons, the Court finds that the parking of the cruiser was not a stop and that the subsequent stop and pat-down of defendant Lovelace was permissible under *Terry.*

A. *Blocking the Cadillac as a "Stop" or "Seizure"*

A seizure arises "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen..." *Terry,* 392 U.S. at 19 n. 16, 88 S.Ct. 1868. Whether a defendant's liberty has been restrained is a function of whether a reasonable person,

under those circumstances, would have believed he was not free to leave the officer's presence. *United States v. Wylie,* 569 F.2d 62, 68 (D.C.Cir.1977); *United States v. Eaglin,* 759 F.Supp. 25, 26 (D.D.C.1991). Merely "approaching an individual on the street or in another public place, by asking him if he is willing to answer questions" or identifying oneself as a police officer is not a violation of the Fourth Amendment. *Florida v. Royer,* 460 U.S. 491, 498, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *see also California v. Hodari D.,* 499 U.S. 621, 628, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). However, "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled" might be enough to constitute a seizure. *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); *United States v. Wood,* 981 F.2d 536, 539–40 (D.C.Cir.1992).

■ In this case, the officers' act of placing their cruiser in a position that partially blocked the *parked* Cadillac's mobility was not a sufficient "show of authority" that would necessarily cause a reasonable person to believe he was not free to leave the scene by other means. Indeed, the young man who appeared to be engaging in a hand to hand transaction with defendant Lovelace walked away undisturbed.[2] Moreover, the officers' act of pulling into the parking lot and stopping in front of the Cadillac cannot reasonably be construed as the type of physical or verbal intimidation necessary under the Supreme Court's *Mendenhall* analysis. *See, e.g., United States v. Wood,* 981 F.2d at 540–41 (D.C.Cir.1992) (defendant had been seized where armed officer positioned himself directly behind defendant, commanded him to stop, and was so close that the defendant "had nowhere to go"); *United States v. Jordan,* 958 F.2d 1085, 1087 (D.C.Cir. 1992) (defendant had been seized when narcotics officer asked for consent to search defendant's bag, and took and retained the defendant's driver's license, thereby preventing the defendant from leaving); *United States v. Eaglin,* 759 F.Supp. at 26–27 (defendant had been seized where two officers jumped from their vehicle, yelled "police," and displayed their guns as they approached the defendant, who was walking down the sidewalk). And while the D.C. Circuit has evaluated investigatory stops involving the blocking of defendants' vehicles to determine whether police conduct rose to the level of an arrest, other intimidating or threatening factors were present in those cases when they concluded a seizure had oc-

---

**2.** A Fourth Amendment seizure occurs when "an officer restrains the freedom of a person to walk away…" *Brower v. County of Inyo,* 489 U.S. 593, 595, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989). Although the D.C. Circuit has not specifically ruled on this issue, at least one other circuit has held that the Fourth Amendment is not implicated when a police officer stops next to a parked car, blocking the occupant from driving away. *See United States v. Summers,* 268 F.3d 683, 687 (9th Cir.2001); *see also United States v. Kim,* 25 F.3d 1426, 1430 (9th Cir.1994). With such interactions, the "disparity between the automobile and pedestrian stops dissipates and the driver is not clearly stopped in any sense *ab initio,* except of his own volition…Nothing prevent[s] him from leaving the scene on foot." *Summers,* 268 F.3d at 687 (citing *United States v. Kim,* 25 F.3d at 1430); *see also United States v. Davis,* 2002 WL 31430284, *3 (7th Cir., Oct.29, 2002) (although "[i]nterrogating automobile occupants can be more intrusive than questioning pedestrians-for example, when the police stop a car in transit to make inquiries.… [t]his disparity between automobile and pedestrian stops dissipates, however, when the police approach a car…that is already stopped of the driver's own volition.") (citations omitted).

curred. *See United States v. Gale*, 952 F.2d 1412, 1415 (D.C.Cir.1992) (defendant was seized when police pulled defendant off of the road, parked patrol cars in front and in back of defendant's car, and approached defendant's car to question him); *United States v. White*, 648 F.2d 29, 36 (D.C.Cir.1981) (defendant was stopped when police blocked his car and approached with guns drawn); *see also United States v. Johnson*, 212 F.3d 1313, 1317 (D.C.Cir.2000) (finding that district court was not obligated to conclude that the defendant was seized when the police officer pulled into a parking lot, blocking his car, because the defendant provided little factual support for his argument). Thus, in light of the circumstances presented here, and in the absence of any precedent to the contrary, the Court finds that the officers did not need reasonable articulable suspicion to pull into the parking lot and stop their cruiser in front of the Cadillac because doing so did not constitute a stop under *Terry*, 392 U.S. at 19–20, 88 S.Ct. 1868.

B. *Reasonable Articulable Suspicion to Remove Lovelace from the Cadillac*

■ Defendant Lovelace argues, in effect, that even if the officers' act of blocking the Cadillac did not constitute a stop, the officers' act of removing him from the vehicle and searching him constituted an arrest for which they needed probable cause. The Court disagrees. The Court finds that the officers at that point were conducting an investigatory stop of Lovelace [3] and for the following reasons had the

requisite reasonable articulable suspicion necessary under *Terry*.

First, Officer Branson testified that he had been involved with several narcotics-related arrests in the very parking lot where the defendants were parked. He also noted during his testimony that a week prior to this incident, another police officer who lived in the apartment complex near the parking lot told Branson that residents complained about drug activity there. While mere presence in a high-crime area alone would be insufficient to establish reasonable suspicion, the probative value of this factor is well-established. *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000); *United States v. Brown*, 334 F.3d at 1165; *United States v. Edmonds*, 240 F.3d 55, 60 (D.C.Cir.2001). In addition, the importance of this factor is further compounded by the lateness of the hour. *United States v. Brown*, 334 F.3d at 1165.

Second, as Officer Branson exited his cruiser, he saw what appeared to be a "hand-to-hand" transaction between an individual standing outside of the passenger side of the Cadillac and the passenger, defendant Lovelace. As soon as that individual recognized the cruiser, he turned and walked away from the scene. Furtive movements such as these have been consistently recognized as grounds for reasonable suspicion, justifying a stop and frisk, *Illinois v. Wardlow*, 528 U.S. at 124, 120 S.Ct. 673, and are particularly significant when done in response to police presence. *United States v. Brown*, 334 F.3d at 1168. Although the D.C. Circuit has suggested

---

**3.** At the point that Lovelace was removed from the vehicle, Officers Branson and Sucato had merely effected an investigatory stop of the defendants. Unable to drive from the parking lot, with a uniformed officer at each door of the vehicle, and subject to removal from the vehicle, neither Lovelace nor Sedgewick could reasonably believe he was free to leave the scene. Absent evidence that the officers' use of force converted an investigatory stop to an arrest, see *United States v. Clark*, 24 F.3d 299, 303–04 (D.C.Cir.1994), *United States v. White*, 648 F.2d at 34–36, their actions need not be supported by probable cause.

that "simply receiving an object from another person" is a common occurrence for which there could be many explanations, *United States v. Johnson*, 212 F.3d at 1316, the "hand-to-hand" transaction under these circumstances was coupled with furtive conduct that caused the officers to believe that a drug transaction had just occurred.

Third, as Officer Branson exited the cruiser and approached the Cadillac, he detected the smell of marijuana, which clearly gave rise to at least reasonable suspicion, if not probable cause, that a crime was being committed. *See United States v. Turner*, 119 F.3d 18, 20 (D.C.Cir. 1997); *see also United v. Zepeda–Orozco*, 2003 WL 22718172, at *1 (9th Cir., Nov.18, 2003) (probable cause based on smell of marijuana and information known to police officer regarding a truck that slipped over the U.S. border); *United States v. Vasquez–Castillo*, 258 F.3d 1207, 1213 (10th Cir.2001) (probable cause based on smell of raw marijuana and evidence of hidden compartment).

■ Finally, Officer Branson testified that as he engaged defendant Sedgewick in conversation, Officer Sucato saw defendant Lovelace make reaching motions towards his waistband. This reaching motion supported a reasonable suspicion that Lovelace was secreting a weapon. *See In re D.E.W.*, 612 A.2d 194, 196 (D.C.1992); *see also United States v. Robertson*, 305 F.3d 164, 170–71 (3d Cir.2002); *United States v. Gibson*, 64 F.3d 617, 619, 623 (11th Cir.1995); *United States v. Mendenhall*, 1990 WL 183963, at *2 (7th Cir., Nov.26, 1990) (unpublished). Under *Terry*, an officer need not be "absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." 392 U.S. at 27, 88 S.Ct. 1868. In short, the Court finds that Love-

lace's reaching motion, when combined with the fact that the officers had just seen what they believed to be a drug transaction taking place in a car emanating the smell of marijuana, more than constituted the reasonable suspicion necessary to believe that Lovelace might be armed and should therefore be searched. *See, e.g., United States v. Conyers*, 118 F.3d 755, 757 (D.C.Cir.1997) ("those who transport drugs often carry (and all too often use) a firearm"); *see also United States v. White*, 648 F.2d at 35–36 (reasonable for officer to draw weapon when approaching a vehicle in which he believes narcotics are present). Thus, an investigatory stop and protective pat-down of defendant Lovelace were warranted.

### II. Motion to Suppress Lovelace's Statements as Involuntary

■ Lovelace finally argues that all statements he made on the date of his arrest should be suppressed as involuntary. The D.C. Circuit has held that courts should look to the totality of the circumstances in determining whether the defendant's will was overborne in such a way as to render his statements the product of coercion. *United States v. Bradshaw*, 935 F.2d 295, 299 (D.C.Cir. 1991). Factors to evaluate include: the defendant's age, education, intelligence; whether the defendant was informed of his constitutional rights; the length of questioning; repeated and prolonged nature of the questioning; whether the police or the accused initiated the dialogue; and the use of physical punishment, such as the deprivation of food or sleep. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The bottom line, however, is whether the suspect's will was overborne by police coercion. *Colorado v. Connelly*, 479 U.S. 157, 164, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). Officer Branson testified that af-

ter Lovelace was arrested, he gave a written waiver of his rights under *Miranda* and then answered questions for about a half an hour. No facts were presented by the defense that indicate Lovelace's statements were anything other than voluntary. Accordingly, in the absence of evidence suggesting coercion, the Court denies the defendant's motion to suppress his statements.

### ORDER

For the reasons set forth above, it is this 8th day of April, 2004, hereby

**ORDERED** that defendant Lovelace's Motion to Suppress Statements [# 13] is **DENIED;** and it is further

**ORDERED** that defendant Lovelace's Motion to Suppress Evidence [# 15] is **DENIED.**

**SO ORDERED.**