925 So.2d 404 (2006)
Glenn Lamar HOUSTON, Appellant,
v.
STATE of Florida, Appellee.
No. 5D05-1679.
District Court of Appeal of Florida, Fifth District.
March 31, 2006.
*405 Gregory W. Eisenmenger and Robert R. Berry, of Eisenmenger & Berry & Peters, Viera, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Anthony J. Golden, Assistant Attorney General, Daytona Beach, for Appellee.
SHARP, W., J.
Houston appeals from his judgment and sentences for trafficking in cocaine (200-400 grams) and resisting an officer without violence.[1] The trial court denied his motions to suppress evidence seized at the time of his arrest and evidence seized in Houston's home and storage unit. He entered no contest pleas to the charges and reserved his right to appeal. We have jurisdiction[2] and affirm.
The record establishes that Houston was arrested at an Exxon gas station/convenience store in Melbourne, by Dotson, a DEA Task Force agent with the Brevard County Sheriff's Office. Dotson and other agents were dressed in plain clothes and driving unmarked vehicles. They were parked at the gas station, awaiting instructions in an unrelated drug case.
Dotson noticed a vehicle driven by co-defendant Clark pull into the parking lot. Clark parked away from the store and remained inside his vehicle. Dotson was suspicious. If another person came to meet Clark, Dotson planned to go and talk to them because he thought they might be engaging in a drug transaction.
Fifteen minutes later, Houston drove his truck into the parking lot and parked next to Clark's vehicle. Houston's 14-year-old daughter, Jolena, went inside the store. Clark then left his vehicle and got into the passenger side of the truck.
Dotson moved his car behind the truck and stopped, effectively preventing Houston from leaving the parking lot. Dotson walked up to the driver's side of Houston's truck. He looked inside, through the window, and saw Houston with white powder in a folded ten-dollar bill in one hand and in a plastic bag in the other. Based on his training and experience, he believed the white powder was cocaine. He testified that neither Houston nor Clark noticed him before he saw Houston in possession of the white powder.
Dotson knocked on the window, identified himself as a deputy, and asked Houston to open the door. Houston refused to do so and put the truck into reverse. Another agent smashed the passenger window. Houston stopped the truck and opened the door.
Houston and Clark were arrested. Agents found plastic bags in Houston's shirt containing what appeared to be cocaine and a briefcase that contained what appeared to be cannabis. The white powder Dotson had observed field tested positive for cocaine.
The agents talked with Jolena and questioned her about her father's activities. She told them that Houston did not work, and that he drove around a lot at night to various homes. He went to a storage unit before going to the homes. He had just been to the storage unit before coming to the gas station that day. She guided the police to the storage unit.
*406 A person leasing space at the storage facility identified Houston as the occupant of a unit. A K-9 dog alerted on the unit. A local records check showed that Houston had been arrested seven times on thirty-two charges.
Based on this information, Dotson applied for and obtained warrants to search Houston's home and storage unit. He identified Jolena as a "confidential source" and not by name. Cocaine, cannabis and drug paraphernalia were found in both locations.
The trial court concluded that the motions to suppress should be denied because Dotson had not seized Houston by making a show of authority before he obtained probable cause to arrest him. Blocking Houston's truck with his unmarked car and approaching the driver's window did not constitute a Fourth Amendment seizure. He also concluded that no seizure occurred because Houston and Clark were unaware that Dotson had parked his car behind the truck and that he and another agent were approaching the truck.
In suppression cases, the standard of review to be applied to the factual findings of the trial court is whether competent, substantial evidence supports those findings. All evidence and reasonable inferences therefrom must be construed in a manner most favorable to upholding the trial court's decision. However, the trial court's application of the law to the facts is reviewed de novo. Fitzpatrick v. State, 900 So.2d 495 (Fla.2005); Thomas v. State, 894 So.2d 126 (Fla.2004), cert. denied, 544 U.S. 1003, 125 S.Ct. 1939, 161 L.Ed.2d 779 (2005); Connor v. State, 803 So.2d 598 (Fla.2001), cert. denied, 535 U.S. 1103, 122 S.Ct. 2308, 152 L.Ed.2d 1063 (2002); Dewberry v. State, 905 So.2d 963 (Fla. 5th DCA 2005).
Here, there was a conflict in the evidence as to when Houston became aware of the presence of law enforcement officers. According to Houston, he was surrounded by officers almost as soon as Clark got in his truck and before the officers had an opportunity to observe any cocaine. According to Dotson, neither Houston nor Clark was aware of his presence until he saw the cocaine and knocked on their window.
The trial court resolved this conflict in the evidence in favor of the state. Dotson's testimony is sufficient to support this determination. See Holden v. State, 877 So.2d 800 (Fla. 5th DCA 2004) (trial court's determination that officers' testimony was more credible than defendant's testimony was supported by the evidence).
The question we must then address is whether Houston was "seized" for purposes of the Fourth Amendment before Dotson had probable cause. A seizure arises only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen. Terry v. Ohio, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Whether a defendant's liberty has been restrained is a function of whether a reasonable person, under those circumstances, would have believed he was not free to leave the officer's presence. United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).
A seizure does not occur when an officer merely approaches an individual in a public place or a driver seated in an already parked vehicle. Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); State v. Jestice, 177 Vt. 513, 861 A.2d 1060 (2004) However, "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, *407 or the use of language or tone of voice indicating that compliance with the officer's request might be compelled" may be enough to constitute a seizure. Mendenhall, 446 U.S. at 554, 100 S.Ct. 1870.
Applying these principles, we concluded that the officer's actions in Young v. State, 803 So.2d 880 (Fla. 5th DCA 2002), constituted an "investigatory stop"[3] of the defendant rather than a consensual encounter. In that case, the arresting officer, while on routine patrol, saw Young's vehicle pull into the driveway of a government apartment complex that was under construction. Knowing that the apartment was under construction and that nobody should be there, the officer turned his patrol car around and pulled behind Young's vehicle  thereby blocking the driveway's exit  and activated his emergency lights.
As the officer positioned his patrol car, Young went to the front of his vehicle and raised the hood. The officer approached and asked Young if he was having car problems. Young responded that he was "checking the gas cap." Upon further inquiry, Young repeated that he was checking the gas cap. Because of the absurd answer, the officer asked Young for his identification. A check revealed that Young's driving privileges were currently suspended. Young was arrested and a subsequent search revealed a bag containing cocaine next to the radiator cap.
Young was charged with possession of cocaine and felony driving while his license was suspended. He filed a motion to suppress, arguing that the cocaine should be suppressed because it was obtained during an illegal detention. The trial court denied Young's motion.
On appeal, Young argued the officer's use of his patrol car in a blocking manner and subsequent activation of the patrol car's emergency lights resulted in a show of authority that would cause any reasonable person to believe he or she was not free to leave. We agreed, explaining as follows:
Florida courts consistently agree that an officer's use of his or her emergency lights evidences an investigatory stop rather than a consensual encounter. See, e.g., Siplin v. State, 795 So.2d 1010 (Fla. 2d DCA 2001); Hrezo v. State, 780 So.2d 194 (Fla. 2d DCA 2001); Brooks v. State, 745 So.2d 1113 (Fla. 1st DCA 1999). The reason such encounters are investigatory stops rather than consensual encounters is the use of the emergency lights leads the citizen to believe that he or she is no longer free to leave. Id. Moreover, for the same reason, positioning a patrol car to obstruct the path of the vehicle once it is stopped elevates the encounter into an investigatory stop. See Griffin v. State, 800 So.2d 345 (Fla. 4th DCA 2001); Cowart v. State, 635 So.2d 1063 (Fla. 2d DCA 1994); see also Palmer v. State, 625 So.2d 1303 (Fla. 1st DCA 1993).
803 So.2d at 882.
We also found Hrezo to be factually similar to Young. In Hrezo, a deputy sheriff parked his patrol car behind the defendant's vehicle, which was parked in a public park away from the main parking area where there were no other people or vehicles. Before the deputy exited his patrol car, he activated its emergency and takedown lights.
When the deputy approached the vehicle, he requested the defendant's identification. At the same time, the deputy shined his flashlight on the interior of the *408 defendant's vehicle and saw a glass narcotics pipe. The deputy ordered the defendant out of the vehicle, handcuffed him, and arrested him for possession of drug paraphernalia. A subsequent search of the defendant and his vehicle produced cocaine and additional paraphernalia.
The defendant filed a motion to suppress the evidence. That motion was denied and the defendant appealed. The second district court held the deputy had initiated a stop of the defendant without reasonable suspicion of criminal activity and so the defendant's motion to suppress should have been granted.
The court concluded that when a police officer turns on his emergency and takedown lights under these circumstances, a reasonable person would expect to be stopped, at a minimum, for a traffic infraction and perhaps for the crime of fleeing and eluding if he drove away. Accordingly, the use of such lights is typically regarded as an act that initiates an investigatory stop.
Unlike the officers in Young and Hrezo, the officers here did not use their emergency lights or sirens as a show of authority. Dotson parked his unmarked vehicle at an angle about five to six feet behind Houston's truck, an action could have been taken by any customer at the convenience store. The officers' actions in pulling behind Houston and walking up to Houston's truck were so unobtrusive that neither he nor Clark was even aware of the officers.
Moreover, the officers were in plain clothes and not in uniforms. Even after he noticed the men, Clark did not realize they were law enforcement officers. The officers did not give any commands or display their weapons.
Up until this point, no reasonable person would have believed he had been "seized." See United States v. Sinden, 2006 WL 278287 (W.D.Mo. Feb. 02, 2006) (rejecting defendant's argument that he was seized for Fourth Amendment purposes when officer parked in front of his vehicle blocking his movement); United States v. Barry, 394 F.3d 1070 (8th Cir.2005) (police officer's conduct in approaching defendant's parked vehicle in vacant parking lot behind a mall, parking his patrol car in front of the defendant's vehicle with no emergency lights activated and knocking on the window of defendant's vehicle did not amount to a show of authority such that a reasonable person would believe he was seized); United States v. Lovelace, 357 F.Supp.2d 39 (D.D.C.2004) (officers' act of pulling into parking lot and placing their cruiser "nose to nose" about five feet in front of the defendant's parked vehicle was not a sufficient "show of authority" that would necessarily cause a reasonable person to believe he was not free to leave the scene by other means; stopping in front of the defendant's vehicle cannot reasonably be construed as the type of physical or verbal intimidation necessary under the Supreme Court's Mendenhall analysis).
The officers did not make their presence known and ask Houston to open his door until after Dotson saw white powder in Houston's possession. Houston had white powder in a folded ten-dollar bill in one hand and in a plastic baggie in his other hand. Based on his training and experience, Dotson reasonably believed this powder to be cocaine and thus had probable cause for an arrest or seizure. See State v. James, 693 So.2d 1086 (Fla. 2d DCA 1997) (probable cause to arrest defendant for possession of cocaine was provided by officer's observation of white powdery substance in plastic bag in defendant's mouth); State v. Billingsly, 542 So.2d 444 (Fla. 5th DCA 1989) (observation of mirror or glass, white powdery substance, and razor blade inside vehicle gave deputy *409 sheriff probable cause to arrest for possession of cocaine).
After Dotson spotted the cocaine, he knocked on the truck's window and asked Houston to open the door. Houston did not comply and instead put the truck in reverse. Another officer smashed the passenger window. This apparently startled Houston and caused him to stop the truck. It was only at this point that Houston submitted to the authority of the officers and was thus "seized" for purposes of the Fourth Amendment. See California v. Hodari D., 499 U.S. 621, 626, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) (seizure does not occur until the suspect is actually physically subdued by an officer or submits to the officer's show of authority; "[a]n arrest requires either physical force... or where that is absent, submission to the assertion of authority").
Since Houston was not seized until after probable cause was established, the trial court properly denied his motion to suppress. See State v. Bartee, 623 So.2d 458 (Fla.1993) (chase by police officer and order for defendant to stop did not constitute a seizure, therefore cocaine abandoned during defendant's flight was not fruit of the poisonous tree and should not have been suppressed); Perez v. State, 620 So.2d 1256 (Fla.1993) (police officer's order to defendant to "freeze" or to stop and the subsequent chase by officer did not constitute a "seizure" until defendant was caught; therefore, recovery of firearm thrown away by the defendant during the chase was not the result of an illegal seizure and should not have been suppressed).
Our conclusion that probable cause existed before Houston was seized defeats his argument that the actions of the officers at the Exxon station "tainted" the search warrants. Further, Houston argues the warrants were improperly obtained, because Dotson failed to allege the dog that alerted on his storage unit had been certified, lacks merit. There is no requirement that a dog be certified to detect narcotics. Characterizing a dog as properly trained, as was done in this case, is a sufficient predicate upon which to issue the warrant. Vetter v. State, 395 So.2d 1199 (Fla. 3d DCA 1981); United States v. Berry, 90 F.3d 148 (6th Cir.), cert. denied, 519 U.S. 999, 117 S.Ct. 497, 136 L.Ed.2d 389 (1996).
Houston's argument that his daughter was falsely described as a confidential informant is also inaccurate. Dotson referred to her in his affidavit as a confidential source. He testified he did this in order to protect her identity. This was not a false representation.
AFFIRMED.
PALMER and LAWSON, JJ., concur.
NOTES
[1] § 893.135(1)(b); § 843.02, Fla. Stat.
[2] Fla. R.App. P. 9.140(b)(2)(A)(i); Brown v. State, 376 So.2d 382 (Fla.1979); Hedglin v. State, 892 So.2d 1183 (Fla. 5th DCA 2005).
[3] A "stop" is a shorthand way of referring to a seizure that is more limited in scope and duration than an arrest. State v. Jestice, 861 A.2d at 1062.