[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-13063
Non-Argument Calendar

_____

D.C. Docket No. 1:12-cr-20562-PCH-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TAYURON DOLOMON,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 24, 2014)

Before CARNES, Chief Judge, JORDAN and ANDERSON, Circuit Judges.

PER CURIAM:

Tauryon Dolomon appeals his conviction for unlawfully possessing a

firearm as a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1).

He contends that the district court erred in denying his pretrial motion to suppress the firearm underlying his conviction as the fruit of an unlawful Fourth Amendment seizure. He further argues that the court erred in admitting evidence of his 1998 conviction for firearm theft under Federal Rule of Evidence 404(b).

I.

On the night of December 8, 2011, Miami Police Detective Calvin Chalumeau responded to a report of "an unknown black male selling narcotics out of an Infiniti at an abandoned house" near the corner of 12th Avenue and 60th Street, which was known as a high drug area. Dressed in plain clothes and driving an unmarked police car, Detective Chalumeau drove to that location and parked across the street from the vacant house, approximately twenty feet from the Infiniti. When he arrived, Detective Chalumeau saw a uniformed police officer searching a black male standing beside the Infiniti, but not the car itself or any of its three occupants, and then saw that officer leave the scene without making an arrest. Apparently, the officer had not found any narcotics on the black male.

After the uniformed officer left, the black male walked over to the Infiniti, leaned inside, and spoke to one of the car's three occupants. Soon after, Dolomon pulled up in his pickup truck, parked in the middle of street, exited the car, and approached the black male still standing outside the Infiniti. Detective Chalumeau witnessed Dolomon hand the black male money in exchange for a black pouch,

2

which he promptly placed in the front waistband of his pants before getting back into his truck and driving off.

Convinced that he had just witnessed a hand-to-hand drug transaction, Detective Chalumeau radioed his fellow officers to pursue Dolomon.  At a traffic light at the intersection of 10th Avenue and 62nd Street, three officers in three unmarked police cars (Detectives Javier Gonzalez, Reynold Philippe, and Horace Morgan) tried to "contain" Dolomon's truck by blocking it in on three sides — the front, the rear, and the driver's side.  Detective Philippe, who had positioned his car behind Dolomon's truck, activated his police lights, exited the car, and began to draw his gun.  Detective Gonzalez, who was positioned in front of Dolomon's truck, may or may not have attempted to bump the front fender of the truck to prevent any possible escape.  But even if he had, the record shows that no actual contact was made and that Dolomon immediately threw his truck into reverse, ramming into the front of Detective Philippe's car, and then sped off through a red traffic light.

The officers pursued Dolomon with their police lights activated as he exceeded the speed limit and ran multiple red lights.  At various points during the car chase, which lasted just under ten minutes, Detectives Philippe and Morgan separately pulled alongside Dolomon's truck, rolled down their windows, and ordered him to pull over.  Dolomon ignored those commands and, once he reached

3

the vicinity of 5th Avenue and 20th Street, he threw the black pouch onto the median of 20th Street, rolled out of his still-moving truck, and dashed on foot toward the entrance of a nearby apartment complex. While Detective Philippe stood guard over the unopened black pouch, Detective Duriel Smith, Detective Morgan, and Sergeant Edwin Gomez chased Dolomon into the apartment complex, where he was finally apprehended and placed under arrest. Officers then opened the black pouch that Dolomon had discarded during the chase and found a loaded handgun inside.

## II.

Dolomon was indicted by a federal grand jury on one count of unlawfully possessing a firearm as a convicted felon. Before trial, he moved to suppress the firearm as the fruit of an unlawful Fourth Amendment seizure, claiming that he had been seized without reasonable suspicion or probable cause when the police attempted to contain his truck at the traffic light on the corner of 10th Avenue and 62nd Street. In particular, he argued that a seizure within the meaning of the Fourth Amendment occurred because Detective Gonzalez physically struck the front of his truck.

Following an evidentiary hearing at which officers Chalumeau, Philippe, Morgan, Gonzalez, Smith, and Gomez testified, a magistrate judge issued a report recommending that Dolomon's suppression motion be denied. Crediting Detective

4

Gonzalez's testimony that he never struck or attempted to strike Dolomon's truck during the attempted takedown at the traffic light, the magistrate judge concluded that the firearm was not suppressible as the fruit of an unlawful seizure because Dolomon had abandoned it before he was actually seized for the first time, which was at the apartment complex. The magistrate judge alternatively found that even if the initial attempted stop constituted a Fourth Amendment seizure, it was adequately supported by reasonable suspicion that Dolomon had engaged in a drug transaction. The district court adopted the magistrate judge's report over Dolomon's objections and denied his suppression motion.

In anticipation of trial, the government provided notice under Rule 404(b) of its intent to introduce evidence of Dolomon's 2009 conviction for fleeing and eluding a police officer, during which Dolomon had thrown a firearm from a moving vehicle. The government indicated that it intended to introduce that prior conviction as proof of Dolomon's intent, knowledge, and lack of mistake with respect to the firearm possession charge. The district court ruled that it would not permit the government to introduce the 2009 conviction under Rule 404(b) "unless the door was opened" by the defense.

Dolomon pursued an innocence defense at trial, suggesting that he did not knowingly possess the firearm found by the police because it was either planted by the officers or just happened to have been in the street. In support, he called his

5

longtime girlfriend, Melissa Shervington, and his aunt, Linda Jones, both of whom testified that they had never known Dolomon to be involved with firearms. To counter that testimony and Dolomon's defense, the government sought to introduce evidence of Dolomon's 1998 conviction for stealing firearms while burglarizing a gun shop. Although that prior conviction had not been included in the government's Rule 404(b) notice, Dolomon did not object to its admission on that ground. The district court concluded that Dolomon had "opened up the door" to evidence of his 1998 conviction for firearm theft, and the court admitted it into evidence under Rule 404(b) during the government's rebuttal case. The jury found Dolomon guilty as charged and the court sentenced him to 15 years imprisonment as an armed career criminal.

III.

Dolomon first challenges the district court's denial of his motion to suppress the firearm underlying his conviction, contending that it was the fruit of an unlawful seizure unsupported by either reasonable suspicion or probable cause of wrongdoing. His challenge rests on the premise that he was seized for purposes of the Fourth Amendment when the police officers attempted to contain him at the first traffic light by boxing in his truck, bumping his vehicle, and displaying a show of authority. To that end, he argues that the district court "improperly

resolved critical credibility issues," including its decision to credit Detective

Gonzalez's testimony that he did not strike or attempt to strike Dolomon's truck.

When reviewing the denial of a motion to suppress, we review the district

court's factual findings for clear error and its application of law to those facts de

novo.  United States v. Ramirez, 476 F.3d 1231, 1235 (11th Cir. 2007).  A person

is "seized" within the meaning of the Fourth Amendment "only when, by means of

physical force or a show of authority, his freedom of movement is restrained."

United States v. Mendenhall, 446 U.S. 544, 553, 100 S.Ct. 1870, 1877 (1980); see

also Brendlin v. California, 551 U.S. 249, 254, 127 S.Ct. 2400, 2405 (2007) ("A

person is seized by the police and thus entitled to challenge the government's

action under the Fourth Amendment when the officer, by means of physical force

or show of authority, terminates or restrains his freedom of movement . . . .")

(quotation marks omitted).  A seizure is effected by physical force "when there is a

governmental termination of freedom of movement through means intentionally

applied," such as where a law enforcement officer pulls his vehicle "alongside [a]

fleeing car and sideswipe[s] it, producing [a] crash."  Brower v. Cnty. of Inyo, 489

U.S. 593, 597, 109 S.Ct. 1378, 1381 (1989) (emphasis omitted).  Absent the use of

physical force, a seizure requires both a show of authority and "submission to

[that] assertion of authority."  California v. Hodari D., 499 U.S. 621, 626, 111

S.Ct. 1547, 1551 (1991).  An attempted seizure, without actual submission, is not a

7

seizure for Fourth Amendment purposes. Id. at 626 n.2, 111 S.Ct. at 1551 n.2; see also Troupe v. Sarasota Cnty., Fla., 419 F.3d 1160, 1167 (11th Cir. 2005).

In this case, the district court committed no error in denying Dolomon's motion to suppress the firearm that he discarded during his flight from the police. Dolomon was not seized for Fourth Amendment purposes when the police unsuccessfully attempted to contain his truck at the traffic light. Even assuming, as Dolomon contends, that the simple act of bumping a car's front fender constitutes the physical force necessary to effect a Fourth Amendment seizure, the district court specifically credited Detective Gonzalez's testimony that he never struck Dolomon's truck. While Dolomon challenges that credibility determination and the factual finding that flowed from it, he has not demonstrated that the district court clearly erred in crediting Detective Gonzalez's testimony. Not only was that testimony not "incredible as a matter of law" by describing events the witness "physically could not have possibly observed or events that could not have occurred under the laws of nature," see United States v. Rivera, 775 F.2d 1559, 1561 (11th Cir. 1985) (quotation marks omitted), but it also went unrebutted at the evidentiary hearing. [1]

---

[1] While Detective Philippe testified that he believed Detective Gonzalez "attempted" to bump Dolomon's truck during the attempted takedown, even he acknowledged that Detective Gonzalez "never got a chance to" do so before Dolomon reversed and drove off.

Nor did Dolomon actually submit to the officers' show of authority at the traffic light; instead, he fled. The attempted seizure at the traffic stop was only an attempted seizure. Dolomon was not actually seized by the police until he was apprehended at the apartment complex following the car chase. See Hodari D., 499 U.S. at 629, 111 S.Ct. at 1552 (holding that a fleeing defendant was not seized until he was finally subdued by the police). And because he discarded the firearm before he was actually seized, thereby abandoning it, the firearm was not suppressible as the fruit of an unconstitutional seizure. See id. (upholding the denial of a motion to suppress because "[t]he cocaine abandoned [by the defendant] while he was running [from the police] was . . . not the fruit of a seizure"); United States v. Tinoco, 304 F.3d 1088, 1091 (11th Cir. 2002) (holding that defendants had no basis for challenging the seizure of cocaine because they "effectively abandoned it" while being pursued by the Coast Guard); see also United States v. Cofield, 272 F.3d 1303, 1306 (11th Cir. 2001) (explaining that if a defendant has abandoned property — meaning that he "voluntarily discarded, left behind, or otherwise relinquished his interest" in it — he has no Fourth Amendment basis for objecting to its later acquisition by the police) (quotation marks omitted).[2]

_____

[2] Dolomon cites several decisions from other courts for the proposition that property abandoned after an illegal seizure is subject to suppression under the Fourth Amendment. See United States v. Wilson, 953 F.2d 116, 127 (4th Cir. 1991); United States v. Jones, 374 F. Supp.

IV.

Dolomon next contends that the district court erred in admitting his 1998 conviction for firearm theft under Rule 404(b), because the government failed to provide advance notice of its intent use that evidence, the evidence was not relevant to an issue other than his character, and the evidence was unduly prejudicial. Although Dolomon objected to the government's attempt to introduce that 1998 conviction during its cross-examination of his aunt, he did not do so on any of the grounds he now asserts on appeal, nor did he raise any objections when the government finally introduced that conviction during its rebuttal case. We therefore review his claim only for plain error. See United States v. Chilcote, 724 F.2d 1498, 1503 (11th Cir. 1984); Judd v. Rodman, 105 F.3d 1339, 1342 (11th Cir. 1997) ("[A]n objection on specific grounds does not preserve the error for purposes of appeal on other grounds."). To satisfy that standard, Dolomon bears the burden of showing (1) an error, (2) that is plain, (3) that affected his substantial rights, and (4) that seriously undermined the fairness, integrity, or public reputation of the judicial proceedings. United States v. Aguilar-Ibarra, 740 F.3d 587, 592 (11th Cir. 2014).

---

2d 143, 156 (D.D.C. 2005); United States v. Eaglin, 759 F. Supp. 25, 27 (D.D.C. 1991); United States v. Foster, 566 F. Supp. 1403, 1412–13 (D.D.C. 1983). Whatever the merits of those decisions might be, they are all distinguishable from this case because Dolomon abandoned the firearm before he was seized for Fourth Amendment purposes.

Under Rule 404(b), evidence of other crimes or prior bad acts "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with [that] character," but it may be admissible to prove, among other things, the defendant's knowledge, absence of mistake, or lack of accident. Fed. R. Evid. 404(b). To be admissible, the Rule 404(b) evidence must: (1) be relevant to an issue other than the defendant's character; (2) be proved sufficiently to permit a jury determination that the defendant committed the act; and (3) possess probative value that it is not substantially outweighed by the danger of unfair prejudice. United States v. Jernigan, 341 F.3d 1273, 1280 (11th Cir. 2003). Only the first and third elements are at issue here. Rule 404(b) also provides that upon "request by a defendant in a criminal case, the prosecutor must: (A) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and (B) do so before trial — or during trial if the court, for good cause, excuses the lack of pretrial notice." Fed. R. Evid. 404(b)(2).

Dolomon has not established plain error in the admission of his 1998 conviction for firearm theft, which had not been mentioned in the government's Rule 404(b) notice. First, because Dolomon did not request that the government provide advance notice of any Rule 404(b) evidence that it intended to offer at trial, the plain language of that rule did not require the government to disclose that

it would seek to introduce his 1998 conviction. See id. (requiring pretrial notice upon "request by a defendant in a criminal case"); see also Aquilar-Ibarra, 740 F.3d at 592 (explaining that an error cannot be plain if it is not obvious "under controlling precedent or in view of the unequivocally clear words of a statute or rule") (quotation marks omitted). Second, evidence of the prior conviction for firearm theft was relevant to establishing that Dolomon knowingly possessed the firearm involved in this case, and did not have it because of accident or mistake, as suggested by the trial testimony of his longtime girlfriend and his aunt. See United States v. Taylor, 417 F.3d 1176, 1182 (11th Cir. 2005) (holding that evidence of a defendant's prior conviction for possessing a firearm was admissible under Rule 404(b) to show that he knowingly possessed a firearm on a later occasion); Jernigan, 341 F.3d at 1281–82 ("[T]he caselaw in this and other circuits establishes clearly the logical connection between a convicted felon's knowing possession of a firearm at one time and his knowledge that a firearm is present at a subsequent time (or, put differently, that his possession at a subsequent time is not mistaken or accidental).").

Finally, because the evidence was vital to countering Dolomon's defense that he did not knowingly possess the firearm at issue in this case (and, indeed, the testimony that he apparently had never possessed a firearm), its probative value was not obviously and substantially outweighed by the danger of unfair prejudice.

12

See United States v. Pollack, 926 F.2d 1044, 1049 (11th Cir. 1991) ("[I]f the evidence is essential to obtain a conviction, it may come in."); see also United States v. Lopez, 649 F.3d 1222, 1247 (11th Cir. 2011) (explaining that excluding evidence on grounds of undue prejudice "is an extraordinary remedy which the district court should invoke sparingly, and the balance should be struck in favor of admissibility").  Even if some error did exist in the admission of Dolomon's 1998 conviction for firearm theft, it certainly is not plain or obvious.

**AFFIRMED.**

13