948 So.2d 39 (2006)
STATE of Florida, Appellant,
v.
Wissell IRIZARRY, Appellee.
No. 5D06-545.
District Court of Appeal of Florida, Fifth District.
December 22, 2006.
Rehearing Denied February 2, 2007.
*40 Charles J. Crist, Jr., Attorney General, Tallahassee, and Carlos A. Ivanor, Jr., Assistant Attorney General, Daytona Beach, for Appellant.
Marc L. Lubet, of Marc L. Lubet, P.A., Orlando, for Appellee.
MONACO, J.
The sole issue presented by this appeal is whether the trial court erred in granting the motion of the appellee, Wissell Irizarry, *41 to suppress the evidence resulting from a search of his residence pursuant to a search warrant. Because we conclude that the warrant was properly issued, we reverse.
The facts are essentially undisputed. A detective from the Altamonte Police Department filed an affidavit for search warrant before a circuit judge seeking authorization to search a residence in Altamonte Springs. The detective suspected that cocaine was located on the premises, and that cocaine was being sold from that location in violation of law. More specifically, the detective indicated in his affidavit that the police department received an "anonymous complaint" asserting that drug activity was occurring at the suspect residence. The detective set up a surveillance and observed numerous people arriving at the residence, but staying for only a short time, generally less than five minutes. During one of these surveillances, a male, later identified as Billy Wolfe, arrived at 7:00 p.m. and entered the residence. Two minutes later, Mr. Wolfe left but was quickly pulled over by a police officer for speeding. The detective joined the police officer and a traffic citation was issued. Mr. Wolfe at that point gave his written consent to a search of his car. As the detective searched Mr. Wolfe's vehicle, he saw Mr. Wolfe occasionally squeeze his left front pants pocket. The detective said, "it's in your pocket." Mr. Wolfe then pulled out a plastic bag containing an ounce of cocaine. Mr. Wolfe said that he bought the cocaine at the residence that had been under surveillance for $800. The affidavit continued:
Your affiant asked Wolfe if there were additional narcotics inside the residence. Wolfe advised that there were several ounces of cocaine and that the subject routinely keeps it in the bedroom closet. Wolfe advised that the subject had also offered to sell him cannabis on this date. Wolfe advised that he had been purchasing cocaine from this subject for approximately five months. Wolfe was shown a photograph of the resident Wissell Irizarry. Wolfe advised that this was the subject that he had purchased the cocaine from. Wolfe provided a sworn statement to his involvement and the additional narcotics inside the residence.
Mr. Wolfe's sworn statement was attached to the detective's affidavit.
On the same day that Mr. Wolfe gave his sworn statement the affidavit was presented to a circuit judge for consideration. The circuit judge concluded that there was probable cause to believe that cocaine was being kept in and sold at the subject residence, and signed a search warrant authorizing a search of the residence. A few hours later law enforcement officers executed the search warrant and searched the residence of Mr. Irizarry.
Officers made contact with Mr. Irizarry and his two daughters, plus eight other people who did not reside at the residence. Mr. Irizarry chose not to speak with an attorney. During a search of the premises, 30 grams of cocaine and approximately 333 grams of marijuana were found, along with 51 MDMA pills and assorted drug paraphernalia. In addition, $2,796 was recovered. Most of the items were found in Mr. Irizarry's bedroom. Mr. Irizarry was then placed under arrest.
The State charged Mr. Irizarry with trafficking in cocaine, trafficking in methamphetamines, possession of more than 20 grams of cannabis, and possession of drug paraphernalia. Mr. Irizarry filed a motion to suppress the evidence obtained during the search, noting that Mr. Wolfe had never previously been used as a confidential informant by law enforcement and was not previously known by them to be a truthful or reliable person. In addition, Mr. Irizarry *42 alleged that Mr. Wolfe had an interest in the matter and was not an "ordinary, unquestionably honest, citizen reporting a crime." Mr. Irizarry also suggested that there were no facts in the affidavit to establish Mr. Wolfe's veracity or reliability. He argued that since Mr. Wolfe was never searched prior to entering the residence, as might be the case in a "controlled buy," the cocaine could have been inside Mr. Wolfe's pocket prior to entering the residence. Finally, Mr. Irizarry took the position that the search warrant should not be accepted under a good faith exception because the police department took no action to establish the veracity or reliability of Mr. Wolfe, and did not try to corroborate the information he was providing.
At the suppression hearing the State argued that there were several things that corroborated the informant's statement. First, law enforcement had received an earlier anonymous complaint of possible drug activity. Second, as a result of their surveillance they discovered that numerous persons would arrive and depart from the residence after staying only a short time, activity that was consistent with drug sales. Third, police saw Mr. Wolfe enter the residence and leave two minutes later. When stopped, Mr. Wolfe was found to be in possession of cocaine, and was able to give details about the transaction by which he obtained the proscribed substance, as well as details of previous purchases and additional drugs that could be found in the residence. Finally, Mr. Wolfe identified Mr. Irizarry as the seller and the occupant of the residence.
The trial court, however, found that the search warrant was deficient and entered an order suppressing the evidence. The court, citing to State v. Novak, 502 So.2d 990 (Fla. 3d DCA), review denied, 511 So.2d 299 (Fla.1987), indicated that Mr. Wolfe, who was being arrested for possessing drugs allegedly sold by Mr. Irizarry, was not a citizen-informant and, therefore, was not entitled to a presumption of reliability. The trial court asserted that there was no indication in the warrant that Mr. Wolfe had ever previously been used as an informant, and thus there were no past dealings that could establish his veracity. There was also, according to the trial court, no independent corroboration of the information given by Wolfe. The State appeals the suppression order.
A trial court's ruling on a motion to suppress comes to the appellate court clothed with a presumption of correctness and a reviewing court must interpret the evidence and reasonable inferences and deductions derived from the evidence in a manner most favorable to sustaining a trial court's ruling. See Doorbal v. State, 837 So.2d 940, 952 (Fla.), cert. denied, 539 U.S. 962, 123 S.Ct. 2647, 156 L.Ed.2d 663 (2003); Pagan v. State, 830 So.2d 792 (Fla. 2002), cert. denied, 539 U.S. 919, 123 S.Ct. 2278, 156 L.Ed.2d 137 (2003); San Martin v. State, 717 So.2d 462, 468 (Fla.1998), cert. denied, 526 U.S. 1071, 119 S.Ct. 1468, 143 L.Ed.2d 553 (1999). Accordingly, while the standard of review to be applied to factual findings of the trial court is whether competent, substantial evidence supports the findings, the trial court's application of the law to the facts is reviewed de novo. See Utu v. State, 929 So.2d 718 (Fla. 5th DCA 2006); Houston v. State, 925 So.2d 404 (Fla. 5th DCA), review denied, 935 So.2d 1220 (Fla.2006); Dewberry v. State, 905 So.2d 963 (Fla. 5th DCA 2005); Young v. State, 803 So.2d 880 (Fla. 5th DCA 2002); State v. Kindle, 782 So.2d 971 (Fla. 5th DCA 2001); McMaster v. State, 780 So.2d 1026, 1027 (Fla. 5th DCA 2001); Hines v. State, 737 So.2d 1182 (Fla. 1st DCA 1999). Here, the facts concerning the search are not in dispute.
*43 Illinois v. Gates, 462 U.S. 213, 238-39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), teaches that in determining whether or not to issue a search warrant an issuing magistrate must make a "practical common sense decision" concerning whether there is a "fair probability" that evidence of a crime will be found in the place to be searched. See also State v. Felix, 942 So.2d 5 (Fla. 5th DCA 2006). Absolute certainty is not the requirement. It is the probability of criminal activity, not a prima facie showing of such activity, that is the standard for probable cause. See Illinois, 462 U.S. at 237, 103 S.Ct. 2317. Thus, a determination of probable cause involves those factual and practical considerations of everyday life on which reasonable and prudent persons, not legal technicians, act. Brinegar v. U.S., 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); see also Polk v. Williams, 565 So.2d 1387, 1390 (Fla. 5th DCA 1990). The trial court in determining probable cause must examine the four corners of the affidavit. Our duty in reviewing an order of the trial court suppressing evidence is to ensure that the trial court had a substantial basis for finding that probable cause was lacking. See Garcia v. State, 872 So.2d 326, 329 (Fla. 2d DCA 2004). We conclude in the present case that probable cause did exist to issue the warrant and that a substantial basis for suppressing it was lacking.
If hearsay information forms some of the foundation for a determination of probable cause, the veracity and basis of knowledge of those supplying the hearsay information must be supplied. Gates; Smith v. State, 637 So.2d 351, 352 (Fla. 1st DCA 1994). If the informant is a disinterested citizen reporting a crime and lacking a motive to make false accusations against the suspectthe so-called "citizen-informant" rigorous scrutiny is not necessary. See Novak, 502 So.2d at 992. As the anonymous person who informed law enforcement about the activities in Mr. Irizarry's house cannot be characterized as a citizen-informant, there had to be other information contained in the affidavit that would corroborate his veracity in order for his information to be incorporated into the totality of circumstances to be considered in making a probable cause determination, See McNeely v. State, 690 So.2d 1337, 1338 (Fla. 1st DCA 1997); Smith. Here, we conclude that Mr. Wolfe's sworn declaration against penal interest which was before the issuing magistrate when the warrant was issued, as well as the other facts and factors recited in the affidavit of the law enforcement officer, provided more than sufficient corroboration to permit a finding of probable cause.
In particular, the affidavit first recited that the police received an anonymous tip advising that drug activity was occurring at Mr. Irizarry's residence. Next, it notes that during a surveillance of the residence the affiant observed "numerous subjects arriving at this location and staying for a very brief time (less than five minutes)." That activity was at least consistent with drug sales being consummated at the residence. The affidavit also indicates that Mr. Wolfe went into the residence and exited a short time later, demonstrating some knowledge on his part regarding the activities occurring in Mr. Irizarry's home. We know, as well, that Mr. Wolfe was arrested for speeding a few minutes later, after being paced by one of the officers, and that a subsequent consensual search actually turned up about an ounce of cocaine on his person. Finally, the police had a sworn statement from Mr. Wolfe that was presented to the issuing magistrate in which Mr. Wolfe admitted his own complicity. In his statement Mr. Wolfe detailed the drug sale activities that had been occurring in the residence for about *44 five months and indicated that he had personally seen proscribed drugs in the residence within a few minutes of his arrest. In addition, he identified a picture of Mr. Irizarry as the person who sold him the drugs. It seems to us that viewed in its totality this information was sufficient to establish the reliability of the information received from the informant, and the fair probability that evidence of a crime would be found in Mr. Irizarry's residence. The issuance of the warrant was, therefore, justified.
The trial court relied on Novak in issuing its suppression order. While that case does bear some similarity to the facts of the present case, we conclude that Novak is distinguishable. In Novak a sixteen-year-old first-time informant, who claimed to have received drugs from the defendant on a large number of occasions, indicated to the police that drugs could be found in the subject premises. The informant's information found its way into the affidavit solely by way of the police officer's recitation of it; that is, there was no sworn statement of the informant attached to the officer's affidavit. The opinion of the Novak court indicates that the affidavit of the police officer used to support issuance of the warrant "contained no allegation whatsoever respecting the informant's veracity or that the information supplied had been corroborated in any way." See Novak, 502 So.2d at 991. In the case before us, however, there was significant corroborative information contained in the affidavit to underpin the issuance of the warrant, including: the surveillance of the residence, and the observation by law enforcement of the suspicious activity occurring there; the observation of the informant going to the residence, and his detention by law enforcement within two minutes of his departure; the discovery that the named informant had drugs on his person at the time of his detention; the fact that the informant was willing to give a detailed sworn statement concerning the drug activity in the residence; and the ability of the informant to identify a picture of Mr. Irizarry as the person who sold the drugs found on the informant, and the person who likewise sold him drugs on many occasions in the past.
We conclude, therefore, that the warrant was properly issued and based on a sufficient affidavit. We note, as well, that even if the warrant had been insufficient, the search would have fallen within the "good faith" exception established in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Accordingly, we conclude that the trial court erred in issuing the suppression order.
REVERSED and REMANDED.
GRIFFIN and TORPY, JJ., concur.