ON MOTION FOR REHEARING

COHEN, J.
We grant Grue’s motion for rehearing in part, withdraw our previous opinion, and replace it with the following.
*258 The State appeals an order granting Joseph Grue’s motion to suppress. The issue on appeal is whether there was sufficient evidence to establish probable cause — based upon a police K-9’s alert— set forth in the affidavit to support the issuance of a search warrant, or to paraphrase Justice Kagan, whether the sniff was up to snuff. We conclude the affidavit provided probable cause and reverse.
On January 4, 2012, Officer David Alvarado of the Orange County Sheriffs Office was working at the FedEx sort line with his assigned K-9, Dixie. For reasons that are unclear from the record, Officer Alvarado pulled a package addressed to Grue at the Buena Vista Palace Hotel from the line and placed it with other similar packages. Officer Alvarado had Dixie do a narcotics scent search of the packages, and Dixie alerted Officer Alvarado of the presence of narcotics in the package addressed to Grue.
Based upon Dixie’s alert, Officer Alvarado applied for a search warrant. The affidavit in support of the application for the warrant was a pre-printed form with a minimal amount of case-specific information.[1] The affidavit noted Officer Alvarado’s credentials, training, and experience handling narcotics detection dogs, including Dixie. The affidavit also set forth information regarding Dixie’s training, including that she participated in a narcotics scent discrimination course. It averred that Dixie was “certified” and had located “thousands of pounds of narcotics” in the past. The affidavit related what occurred on January 4, 2012, leading up to and including Dixie’s alert on the package addressed to Grue.
Based on the information contained in the affidavit, a search warrant was issued. Officer Alvarado opened the package and found it contained 6.2 grams of oxycodone pills and approximately 19.1 grams of cocaine. When Grue came to the business center at the Buena Vista Palace Hotel to pick up his package, Officer Alvarado, acting undercover, handed the package to Grue. Grue was almost immediately detained and subsequently charged with one count of trafficking in four grams or more of oxycodone and one count of possession of cocaine with intent to sell or deliver.
Grue moved to suppress the contents of the package, arguing that Officer Alvarado searched the package pursuant to a defective warrant that was, on its face, wholly lacking in probable cause. Grue relied on Harris v. State, 71 So.3d 756 (Fla.2011) (hereinafter Harris I), in which the Florida Supreme Court set forth evidentiary requirements that the State must satisfy in order to establish probable cause based on a dog sniff.[2] He argued that the affidavit supporting the warrant contained merely conclusory, generic statements regarding Dixie’s training and certification, and lacked any explanation thereof. Furthermore, it did not include field records or false alert percentages, as required by Harris I.
At the hearing on the motion to suppress, the trial court considered only the information contained within the four corners of the affidavit. The court was per *259 suaded by Grue’s argument that Harris I applied and granted the motion to suppress, noting: “If the officer had written out things such as what Harris requires, then the Court would probably be — would be denying the motion to suppress.”[3] The State filed a timely appeal.
This case comes to us in a vastly different legal landscape than existed at the time of the hearing on Grue’s motion to suppress. While this appeal was pending, the United States Supreme Court overruled Harris I. See Florida v. Harris, — U.S. -, 133 S.Ct. 1050, 185 L.Ed.2d 61 (2013) (hereinafter Harris II ).[4] Grue argues that, even under Harris II, the affidavit was inadequate and affir-mance is appropriate. We disagree.
We review the trial court’s decision de novo. See State v. Felix, 942 So.2d 5, 8 (Fla. 5th DCA 2006) (citing Pagan v. State, 830 So.2d 792 (Fla.2002)) (stating that standard of review is de novo where trial court bases its probable cause determination solely on examination of the affidavit). The determination of whether probable cause exists to issue a search warrant is made by looking within the “four corners” of the affidavit. Felix, 942 So.2d at 9. Based on the facts set forth in the affidavit, the magistrate must make a “practical common sense decision” about whether there is a “fair probability” that evidence of a crime will be discovered in the place to be searched. State v. Irizarry, 948 So.2d 39, 43 (Fla. 5th DCA 2006) (citing Illinois v. Gates, 462 U.S. 213, 238-39; 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).
Generally, an alert by a properly trained narcotics detection dog provides probable cause. State v. Siluk, 567 So.2d 26, 28 (Fla. 5th DCA 1990). The alert, however, must be sufficiently reliable. See Harris II, 133 S.Ct. at 1056-58. Whether the alert is reliable enough to establish probable cause is determined based on the totality of the circumstances. See id. at 1058 (“The question — similar to every inquiry into probable cause — is whether all the facts surrounding a dog’s alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime.”).
 In Harris II, the Supreme Court overruled the Florida Supreme Court’s requirement that the State present particular evidence in order to establish a dog’s reliability. The Court noted that this “evi-dentiary checklist” was the antithesis of the well-established totality-of-the-cireum-stances approach. Id. at 1056. It specifically took issue with the Florida Supreme Court’s requirement that the State present field performance records, noting why field performance records are actually less reliable than records of a dog’s performance in standard training and certification settings. Id. at 1056-57. For this reason, the Court held that “evidence of a dog’s satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert.” Id. at 1057. Even without formal certification, the Court noted, a dog’s alert can provide probable cause if the dog “recently and *260 successfully completed a training program that evaluated his proficiency in locating drugs.” Id. The Court then concluded that the State had established probable cause for a warrantless search.[5]
Our decision in this case is also guided by pre-Harris case law. See, e.g., State v. Coleman, 911 So.2d 259, 261 (Fla. 5th DCA 2005) (holding that the State can make a prima facie showing of probable cause based on a narcotic detection dog’s alert if it demonstrates that the dog has been “properly trained and certified”);[6] Vetter v. State, 395 So.2d 1199 (Fla. 3d DCA 1981) (holding that characterizing a dog as “trained” in the affidavit established probable cause to issue warrant); accord United States v. Sentovich, 677 F.2d 834 (11th Cir.1982) (agreeing with First and Tenth Circuits that training alone is sufficient to prove reliability of dog’s alert).
The form affidavit utilized by Officer Alvarado was not a model of clarity nor did it provide a wealth of information.[7] It did not contain any'factual information bearing on the time, place, or qualifications of any of the facilities where Officer Alvarado or Dixie trained or the training programs in which they participated. It contained a rote statement that Dixie was trained and certified, but did not describe or explain the training process. Although Harris II allows for evidence of a dog’s certification or training to presumptively establish probable cause, we believe that it is preferable to provide additional information as to the identity of the organization that certified the K-9,[8] the dates of that certification, and additional subsequent training.
However, the test for probable cause does not require the proof that the beyond a reasonable doubt standard or even the preponderance of the evidence standard requires. See Harris II, 133 S.Ct. at 1055. Rather, the question we must answer “is whether all the facts surrounding [the] dog’s alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime.” Id. at 1058. Here, the affidavit passes this test. It represented that Dixie and Officer Alvarado had gone through extensive training and that Dixie had discovered thousands of pounds of narcotics in the past. It then alleged that she had given a positive alert to the presence of narcotics in the package addressed to Grue. Based on these facts, a magistrate making a “practical common sense decision” could reasonably have found that there was a “fair probability” evidence of a *261 crime would be discovered in the package. See Irizarry, 948 So.2d at 43.
Accordingly, we reverse the order granting the motion to suppress. We are cognizant, however, that the case law has changed dramatically during the pendency of this appeal. Counsel for Grue understandably argued the requirements of Harris I to the trial court, which reflected the law at that time. The trial judge applied his understanding of Harris I and granted the motion based upon the failure of the affidavit to make any effort to comply with the provisions of Harris I.[9] On remand, counsel for Grue is not foreclosed from bringing other challenges.
REVERSED and REMANDED.
TORPY, C.J., and ORFINGER, J., concur.

. It appears the process utilized at the FedEx facility in this case was fairly routine, which led to usage of a standardized form.

. The Florida Supreme Court held that, to establish that a dog is sufficiently reliable such that its alert can provide probable cause, the State must present the following evidence: (1) "the dog's training and certification records”; (2) "an explanation of the meaning of the particular training and certification”; (3) "field performance records (including any unverified alerts)”; and (4) "evidence concerning the experience and training of the officer handling the dog, as well as any other objective evidence known to the officer about the dog’s reliability." Harris I, 71 So.3d at 775.

. The court also expressed concern that the affidavit was a pre-typed form that contained inaccuracies. The affidavit indicated that Dixie had completed 180 hours of training when, in fact, the State conceded that she had completed only 160 hours. Nonetheless, the court stated that it did not think the mistake made "a significant difference for purposes of argument.” The court also noted a discrepancy regarding the sex of the dog. The affidavit used the pronoun "he” in referring to Dixie, a female.

. As a general rule, appellate courts must apply the law as it exists at the time of the appeal. Wendell v. United Servs. Auto. Co., 881 So.2d 1178, 1179 (Fla. 5th DCA 2004) (citing Fla. E. Coast Ry. Co. v. Rouse, 194 So.2d 260 (Fla.1966)).

.In Hairis, the officer who conducted the search had completed a 160-hour narcotics detection course offered by the Dothan, Alabama Police Department, the dog (Aldo) had completed a similar 120-hour course offered by the Apopka, Florida Police Department, and Aldo received a one-year certification from Drug Beat, a private company that specializes in testing and certifying K-9s. Id. at 1054. Furthermore, the officer and Aldo went through a forty-hour refresher course in Dothan. Id. They also participated in four hours of training exercises each week to maintain their skills. Id. In these settings, the officer testified, Aldo always performed "at the highest level.” Id. at 1058. We recognize that the evidence in support of probable cause was stronger in Hams than in the instant case. Nevertheless, under the totality of the circumstances, Officer Alvarado’s affidavit was sufficient.

. In Hairis I, the Florida Supreme Court disapproved of Coleman. See Hairis I, 71 So.3d at 775. However, in light of Hairis II's overruling of Hairis I, Coleman is still persuasive.

. Additionally, it does not appear that Officer Alvarado proofread the affidavit. However, neither the discrepancy as to Dixie's sex nor the misstatement regarding the number of hours she trained are critical to our analysis.

. Hairis II suggests the certification be from a bona fide organization.

. We need not reach the issue of whether Harris I was applicable to searches pursuant to a warrant.