IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

STATE OF FLORIDA,

     Appellant,

v.

                              Case No.    5D21-1416
                              LT Case No. 05-2019-CF-051407-A

MELVIN ERNEST REDHEAD,

     Appellee.

_____/

Opinion filed June 10, 2022

Appeal from the Circuit Court
for Brevard County,
Stephen G. Henderson, Judge.

Ashley Moody, Attorney General,
Tallahassee, and Richard Alexander
Pallas, Jr., Assistant Attorney General,
Daytona Beach, for Appellant.

Matthew J. Metz, Public Defender, and
Nancy Ryan, Assistant Public Defender,
Daytona Beach, for Appellee.

PER CURIAM.

The State of Florida appeals the trial court's order granting Melvin

Ernest Redhead's ("Redhead") motion to suppress evidence collected from

his home pursuant to a search warrant.  It argues that the trial court erred in

ruling that the good faith exception to the exclusionary rule described in *United States v. Leon*, 468 U.S. 897 (1984), did not apply here and asserts the evidence obtained should not have been suppressed. As we explain, we find the good faith exception applies and, thus, reverse the suppression order and remand this case for further proceedings.

In October 2019, Agent Jorge Negron, of the Palm Bay Police Department, submitted an affidavit requesting a search warrant for Redhead's residence (the "Early Drive residence"). In it, Agent Negron described Redhead as a convicted felon and listed his extensive criminal history that included the sale of cocaine. Agent Negron then stated that the Palm Bay Police Department had received two Crime Line tips that Redhead was selling heroin and cocaine from the Early Drive residence.

After receiving the tips, the Palm Bay Police Department cultivated an informant who was willing to provide information on cocaine trafficking occurring within the City of Palm Bay. In May of 2019, the confidential informant, whose reliability was unproven at the time, provided the Palm Bay Police Department with an audio-recorded sworn statement in which he averred that between December 2018 and April 2019 he regularly purchased large amounts of heroin and cocaine from Redhead at the Early Drive residence. The informant also stated that a week earlier he drove with Redhead to another residence (the "Las Palmos residence") to pick up more

2

cocaine. The informant stated that Redhead went inside the residence for five minutes before exiting with a cake-sized brick of cocaine in a plastic bag. The two then drove back to the Early Drive residence where Redhead sold the informant cocaine from the brick. After the interview, the informant drove with an officer and identified the Las Palmos residence where Redhead had retrieved the brick of cocaine.

With this information, the Palm Bay Police Department, including Agent Negron, surveilled the Early Drive and Las Palmos residences between May and October 2019. During this period and consistent with the informant's statements, officers witnessed Redhead travel between the two residences, often staying at the Las Palmos residence for five minutes at a time before exiting, often with an object, and returning to the Early Drive residence. They also observed numerous known heroin and cocaine traffickers coming and going from both residences, often spending only a few minutes at each location. In addition, officers observed what appeared to be a hand-to-hand exchange at the front door of the Early Drive residence.

During the course of their surveillance, officers also conducted another audio- and video-recorded interview with the same informant who showed them messages from Redhead inviting the informant to travel to Redhead whenever he wanted. According to the informant, based upon his history

3

with Redhead, he knew that the messages were an invitation to purchase cocaine.

Based upon the foregoing, Agent Negron submitted an affidavit for a search warrant and alleged that there was probable cause to believe that heroin and cocaine were being stored and trafficked from the Early Drive residence. The magistrate judge agreed and issued a warrant for the Early Drive residence.

During the search, police found substantial quantities of heroin, fentanyl, and cocaine, as well as drug trafficking paraphernalia, which led to charges for trafficking in illegal drugs, trafficking in fentanyl, trafficking in cocaine, and use or possession of drug paraphernalia. Redhead moved to suppress the evidence discovered during the search, arguing that Agent Negron's affidavit presented insufficient probable cause to believe that a crime was being committed at the Early Drive residence. In response, the State argued that the allegations in Agent Negron's affidavit were sufficient to establish probable cause for the search and, even if that were not the case, the good faith exception in *Leon* applied to preclude exclusion of the evidence discovered during the search.

Following a hearing at which the trial court considered only Agent Negron's affidavit, as well as argument from counsel, the court granted the motion to suppress. Addressing Redhead's argument that the allegations in

4

Agent Negron's affidavit provided insufficient probable cause for issuance of the search warrant, the court found the affidavit did not go far enough to establish the informant's reliability, noting that police could have corroborated the informant's claims through trash pulls or controlled buys. The court further found that even if the informant was reliable, probable cause was still lacking because the information provided by the informant in his sworn audio-recorded statement about drugs being present at the Early Drive residence was stale, as it was offered several months before police applied for the search warrant.

The trial court next considered the State's argument that the good faith exception to the exclusionary rule applied such that the evidence seized pursuant to the search warrant should not be suppressed. The court concluded that it did not, writing only that the "affidavit is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" As previously indicated, the State challenges only this determination on appeal.

When reviewing an order granting a motion to suppress, we "defer to a trial court's factual findings but apply a de novo review to the trial court's application of law to those facts." *State v. Hart*, 308 So. 3d 232, 235 (Fla. 5th DCA 2020). However, as the trial court's decision here was based solely on a review of Agent Negron's affidavit for a search warrant and no evidence

5

was introduced at the hearing on Redhead's motion to suppress, our review of the order suppressing the evidence is de novo. *Pagan v. State*, 830 So. 2d 792, 806 (Fla. 2002).

Redhead's suppression motion is grounded upon the evidence being seized in violation of the Fourth Amendment to the United States Constitution. This amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."[1] Amend. IV, U.S. Const. To safeguard these Fourth Amendment rights by deterring police misconduct, evidence that is gathered in a manner that violates the Fourth Amendment is suppressed under a court-created exclusionary rule. *United States v. Calandra*, 414 U.S. 338, 348 (1974); *see also State v. Teamer*, 151 So. 3d 421, 430 (Fla. 2014).

However, the application of the exclusionary rule to a given factual scenario is not automatic. In *Leon*, the United States Supreme Court created the good faith exception to the exclusionary rule, which has been summarized as follows:

> In general, the good faith exception to the exclusionary rule precludes the suppression of evidence secured pursuant to an invalid warrant when the officer who conducts the search does so in

---

[1] The Florida Constitution also provides protection from unreasonable searches and seizures but mandates that the right "be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court." Art. I, § 12, Fla. Const.

6

an objectively reasonable reliance upon the validity of the warrant. *United States v. Leon*, 468 U.S. 897 [ ] (1984). In determining whether an officer acted in reasonable reliance on the validity of the warrant, courts must consider whether, given the totality of the circumstances, a well-trained officer armed with the information possessed by the officer conducting the search would have believed the warrant to be valid. *State v. Sabourin*, 39 So. 3d 376, 384 (Fla. 1st DCA 2010). The good faith exception does not apply under the following circumstances: (1) if, in issuing the warrant, the magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the issuing magistrate wholly abandoned his judicial role; (3) where the warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) where a warrant is so facially deficient (i.e., in failing to particularize the place to be searched or the items to be seized) that the executing officer could not reasonably presume it to be valid. *Leon*, 468 U.S. at 923 [ ].

The rationale behind the good faith exception is that the exclusionary rule "is designed to deter police misconduct rather than to punish the errors of judges and magistrates." *Id.* at 916 [ ]. Therefore, when the police act in good faith on a warrant they have no reason to believe is invalid, the deterrent effect of suppressing illegally seized evidence is minimal. *Id*. at 919–20 [ ]; *see also State v. Watt*, 946 So. 2d 108, 110 (Fla. 5th DCA 2007) ("In order to reject the application of the good faith exception in this case, we would need to conclude that an objectively reasonable police officer would have a better understanding of the law of search and seizure and probable cause than did the trial judge who issued the warrant.").

7

*State v. McGill*, 125 So. 3d 343, 351–52 (Fla. 5th DCA 2013).

In sum, the good faith exception applies, precluding the suppression of evidence obtained by officers, if the officers acted in objectively reasonable reliance on the search warrant issued by a detached and neutral magistrate, regardless of whether the warrant was later found by the trial court to be unsupported by probable cause. Thus, the issue before the trial court was whether, given the totality of the circumstances, a well-trained officer with the same information would have believed the warrant to be valid, *see* *Sabourin*, 39 So. 3d at 384, with the caveat that if the search warrant at issue was based on an affidavit so lacking in indicia of probable cause so as to render official belief in its existence entirely unreasonable, then the good faith exception to the exclusionary rule does not apply. *See Leon*, 468 U.S. at 923.

Here, the trial court appears to have rejected the good faith exception for the same reasons it found probable cause for issuance of the warrant lacking—the unproven reliability of the confidential informant and the staleness of his disclosures. While these issues may raise doubt about the presence of probable cause, based upon the totality of the circumstances, we find that the good faith exception applies.

We find that the warrant was not so lacking in the indicia of probable cause so as to render belief in its existence entirely unreasonable. *See*

8

*Wingate v. State*, 289 So. 3d 566, 568–70 (Fla. 1st DCA 2020) (explaining the separate framework for each analysis).  First, Agent Negron's affidavit upon which the warrant was issued related that a confidential informant swore in an audio-recorded statement that he routinely and recently purchased drugs from Redhead at the Early Drive residence.  Riding with an officer, the informant also identified the Las Palmos residence where he alleged Redhead had taken the informant to retrieve a brick of cocaine. While the informant's reliability was unproven at the time of this disclosure, Agent Negron's affidavit provided independent verification of the informant's claim that Redhead would travel to the Las Palmos residence, quickly retrieve something, and return to the Early Drive residence.  *See State v. Smith*, 315 So. 3d 1228, 1230 (Fla. 1st DCA 2021) (finding good faith exception applied, in part, because the affidavit included facts supporting the ex-girlfriend's claim that defendant was selling drugs from his residence).

Second, while the informant's disclosures predated the warrant by several months, Agent Negron's affidavit documented ongoing activity observed by police at the Early Drive and Las Palmos residences, including, but not limited to, visits by known drug traffickers.  According to Agent Negron's affidavit, such activity continued to occur less than a week before the date the warrant issued, demonstrating a likelihood that Redhead continued to sell drugs from the Early Drive residence.  *See State v. Paige*,

9

934 So. 2d 595, 601 (Fla. 5th DCA 2006) ("When an affidavit establishes the existence of a widespread, firmly entrenched, and ongoing narcotics operation, which is observed to be continuing, a staleness argument loses much of its force."); *see also State v. Irizarry*, 948 So. 2d 39, 43 (Fla. 5th DCA 2006) (noting that law enforcement's viewing of numerous people arriving at the residence in question and staying for a very brief time "was at least consistent with drug sales being consummated at the residence"). Since these allegations at least raise a colorable argument that the informant was reliable and his information had not gone stale, it was reasonable for law enforcement to rely on the magistrate's prior determination that probable cause existed for issuance of the warrant to search the Early Drive residence for evidence of drug trafficking. *See Smith*, 315 So. 3d at 1230 (finding good faith exception applied where "the search warrant affidavit created at least a 'colorable argument' that probable cause existed").

Our conclusion that the good faith exception is applicable here is buttressed by the U.S. Supreme Court's decision in *Leon*, which we find to be factually analogous. In *Leon*, an officer with the Burbank Police Department received a tip from a confidential informant of unproven reliability claiming that cocaine and methaqualone were being sold out of a residence in Burbank. *Leon*, 468 U.S. at 901. The informant also claimed that the dealers stored larger quantities of drugs at another residence. *Id*. This

10

information led the Burbank Police Department to "initiate[] an extensive investigation" of the two residences.  *Id*.

During the investigation, which, based on the Supreme Court's description appears to have largely consisted of surveillance, officers observed several individuals known to be involved in the drug trade arrive at the residences in question and, shortly after their arrival, leave with small packages in tow.  *Id*. at 901–02.  One of the individuals observed by the officers was associated with Alberto Leon, who had been arrested the prior year on drug charges.  *Id*. at 901.  At the time of his arrest, Leon's "companion" informed police that Leon was heavily involved in the importation of drugs.  *Id*.  Also, officers learned that prior to their current investigation, an informant, whose reliability was not discussed by the Supreme Court, told a Glendale police officer that Leon stored a large quantity of methaqualone at his residence in Glendale.  *Id*. at 901–02. During the investigation, though, officers learned that Leon moved to a residence in Burbank.  *Id*. at 902.

Based upon this information, the investigating officer applied for and obtained a search warrant for three residences, including Leon's residence in Burbank, which resulted in the discovery of narcotics at each residence. *Id*.  Leon and others were charged with various drug offenses and moved to suppress the evidence discovered pursuant to the search warrant.  *Id*. at

11

902–03. The trial court granted the motion, and a divided panel on the Ninth Circuit Court of Appeals affirmed. *Id*. at 903–05.

The Supreme Court reversed. In concluding that the good faith exception applied and that the evidence should not be suppressed or excluded, the court explained:

> In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause. Only respondent Leon has contended that no reasonably well trained police officer could have believed that there existed probable cause to search his house; significantly, the other respondents advance no comparable argument. Officer Rombach's application for a warrant clearly was supported by much more than a "bare bones" affidavit. The affidavit related the results of an extensive investigation and, as the opinions of the divided panel of the Court of Appeals make clear, provided evidence sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause. Under these circumstances, the officers' reliance on the magistrate's determination of probable cause was objectively reasonable, and application of the extreme sanction of exclusion is inappropriate.

*Id*. at 926.

Like the situation in *Leon*, Agent Negron's affidavit for a search warrant of the Early Drive residence was more than a bare-bones affidavit. As previously described, Agent Negron's affidavit relayed the results of a long investigation that corroborated much of the informant's claims, supporting the notion that the informant was reliable. Agent Negron's affidavit also

12

detailed events suggesting that Redhead continued to sell narcotics from the Early Drive residence days before the warrant was issued. Given the similarities between this case and *Leon*, we find that the trial court erred in concluding that the good faith exception did not apply.[2]

REVERSED and REMANDED for further proceedings.

LAMBERT, C.J., WALLIS and NARDELLA, JJ., concur.

---

[2] Redhead raises several tipsy coachman arguments in support of affirmance. We considered those arguments and find none of them to be availing.